ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
Michael J. Plonsker (SBN 101235)
MJPlonsker@rkmc.com
Rex D. Glensy (SBN 198909)
RDGlensy@rkmc.com
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
Telephone: 310-552-0130
Facsimile: 310-229-5800

Attorneys for Plaintiffs
HANK AZARIA and HOW TO PICTURES, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANK AZARIA, an individual, and HOW TO PICTURES, INC., a California corporation,<br><br>          Plaintiffs,<br><br>v.<br><br>CRAIG BIERKO, an individual,<br><br>          Defendant. | Case No. 12-cv-09732-GAF-RZx<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT**<br><br>Date:     March 4, 2013<br>Time:     9:30 a.m.<br>Courtroom:  740<br><br>**[Declaration of Michael J. Plonsker in Support of Plaintiffs' Opposition To Defendant's Motion to Set Aside Entry of Default filed concurrently herewith]** |

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................ 1

II.    STATEMENT OF FACTS .................................................................. 2

III.   DISCUSSION ..................................................................................... 5

       A.     Bierko's Culpable Conduct Led to the Entry of Default ....................... 6

       B.     Bierko Does Not Have a Meritorious Defense ......................... 9

              1.     Bierko Cannot Own A Copyright In A Voice ............................ 9

              2.     The Parties Never Had An Agreement Pertaining To The
                     Use Of The Baseball Announcer Voice ................................... 10

       C.     Plaintiffs will be Prejudiced by Further Delay ..................... 12

IV.    CONCLUSION ................................................................................. 13

COMPLAINT FOR DECLARATORY
JUDGMENT FOR COPYRIGHT
OWNERSHIP AND NON-INFRINGE

# TABLE OF AUTHORITIES

**Page**

**Cases**

*American Ass'n of Naturopathic Physicians v. Hayhurst,*
227 F.3d 1104 (9th Cir. 2000) .................................................................. 6

*Billy Steinberg Music v. Bonin,*
129 F.R.D. 488 (M.D.Pa 1990) .............................................................. 6

*Brandt v. American Bankers Ins. Co. of Florida,*
653 F.3d 1108 (9th Cir. 2011) .............................................................. 6

*Faris v. Enberg,*
97 Cal. App. 3d 309 (1979) ................................................................ 10

*Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.,*
375 F.3d 922 (9th Cir. 2004) ............................................... 6, 7, 8, 12

*Fritz v. Arthur D. Little, Inc.,*
944 F. Supp. 85 (D. Mass. 1996) .................................................. 9, 10

*Hollywood Screentest of Am., Inc. v. NBC Universal, Inc.,*
151 Cal. App. 4th 631 (2007) .............................................................. 11

*Kingvision Pay-Per-View Ltd v. Lake Alice Bar,*
168 F.3d 347 (9th Cir. 1999) ................................................................ 7

*Mann v. Columbia Pictures,*
128 Cal. App. 3d 628 (1982) .............................................................. 10

*Meadows v. Dominican Republic,*
817 F.2d 517 (9th Cir. 1987) ............................................................ 6, 7

*Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. Partnership,*
507 U.S. 380 (1993) .............................................................................. 12

*Richmark Corp. v. Timber Falling Consultants, Inc.,*
937 F.2d 1444 (9th Cir. 1991) .............................................................. 7

*Rooks v. American Brass Co.,*
263 F.2d 166 (6th Cir. 1959) ................................................................ 6

*Standard Enterprises, Inc. v. Bag-It, Inc.,*
115 F.R.D. 38 (S.D.N.Y. 1987) ............................................................ 6

*TCI Group Life Ins. Plan v. Knoebber,*
244 F.3d 691 (9th Cir. 2001) ................................................................ 6

*Weitzen-Korn v. Lesser,*
40 Cal. 2d 778 (1953) .......................................................................... 11

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

OPPOSITION TO MOTION
TO SET ASIDE DEFAULT

# TABLE OF AUTHORITIES
## (Continued)

**Statutes**                                                                    **Page**

17 U.S.C. §101 ..................................................................................... 9

17 U.S.C. §102(a) ................................................................................. 9

U.S. Const. Art. 1 §8 ............................................................................ 9

**Rules**

Federal Rule of Civil Procedure 12(a)(1)(A)(i) ................................. 2

Federal Rule of Civil Procedure 55(c) ............................................... 5

Federal Rule of Civil Procedure 60(b) ............................................... 6

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OPPOSITION TO MOTION
TO SET ASIDE DEFAULT

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

# I. INTRODUCTION

Defendant Craig Bierko ("Bierko" or "Defendant") has moved to have the default entered against him on December 20, 2012, set aside only after repeatedly being given the opportunity to file an answer, after being given over 2 years to resolve his meritless claim, and after Plaintiffs Hank Azaria ("Azaria") and How to Pictures, Inc. ("How to Pictures") (collectively "Plaintiffs") filed an application for entry of default judgment. Defendant offers no good cause for why his failure to answer or meet court required deadlines should be excused. His motion should be denied and default judgment should be entered.

It is apparent from the facts discussed below that Defendant's real goal is not to defend the claims made against him in the Complaint because he has no defense, but to wreak as much havoc as possible on Azaria, his former friend, who Defendant alleges wronged him. Defendant's actions demonstrate one thing – that he wants to prevent a prompt resolution of this case so as to interfere with Plaintiffs ability to exploit the Azaria Voice and the Jim Brockmire Character by placing a "cloud" on Plaintiffs' ownership. Indeed, Defendant made the same dilatory request he makes now - for time to find counsel - on December 17, 2012. This behavior should not be rewarded.

Defendant's excuses for his failure to file an answer within the prescribed timeframe are essentially that he was too busy to deal with this lawsuit, was unable to find counsel to defend him, and did not find out until recently that he could defend himself. And yet, according to Defendant's own declaration, he was represented by counsel all throughout this period (and for the two years preceding the filing of the Complaint). Defendant fails to explain how he could consider himself unrepresented when he admits that he was represented, why he could not simply ask his own counsel whether he could represent himself, and why his counsel did not advise him that a response to the Complaint must be timely pled. His protestations are implausible, are made in bad faith, and should be refused.

1    Moreover, Defendant makes the conclusory claim that he has a meritorious

2    defense to this action, but he fails to explain what the contours of this meritorious

3    defense might be and merely resorts to a boilerplate assertion that he "disputes

4    Plaintiffs' factual allegations." This is insufficient to constitute a meritorious

5    defense to Plaintiffs' two claims for declaratory relief. Although Defendant does

6    assert in his declaration that he "created the property in question during college," he

7    does not describe what this "property" actually is. It certainly is not the Jim

8    Brockmire Character, or the Funny or Die screenplay or video, all of which were

9    undisputedly created in 2010 without any input by Defendant. Thus, what

10   "property" does Defendant claim to own? He does not say, but the only possible

11   answer is the "voice" of a colorful baseball announcer which is not copyrightable

12   subject matter. Thus, Defendant's "defense" claim also fails on its merits and is

13   anything but meritorious.

14                              **II. STATEMENT OF FACTS**

15       In his motion, Defendant recites a statement of facts that is mostly a work of

16   fiction. An accurate rendition of the facts is as follows:

17       (a)    On November 14, 2012 , Plaintiffs filed the complaint in this action.

18   The case was originally assigned for all purposes to the Hon. Magistrate Judge

19   Fernando M. Olguin with the case number 12-cv-09732-FMO. *See* Declaration of

20   Rex D. Glensy filed in support of Application to Enter Default Judgment ("Glensy

21   Decl."), at ¶2. Bierko admits himself that he "became aware of this lawsuit on

22   November 14, 2012," the same day that it was filed, i.e., he has known about this

23   lawsuit for almost three months. *See* Declaration of Craig Bierko filed in support

24   of Motion to Set Aside Default ("Bierko Decl."), at ¶3.

25       (b)    On November 21, 2012, Bierko was personally served with summons

26   and complaint. The proof of service of summons was filed with the Court on

27   December 3, 2012. *See* Glensy Decl., at ¶3.

28       (c)    Pursuant to the Federal Rule of Civil Procedure 12(a)(1)(A)(i) Bierko

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

60658527.1                              - 2 -                    OPPOSITION TO MOTION
                                                                TO SET ASIDE DEFAULT

1   had 21 days from November 21, 2012, to file a responsive pleading.  This period

2   expired on December 12, 2012, (not on December 17, 2012 as Bierko asserts).  *See*

3   Glensy Decl., at ¶4.

4        (d)    Defendant's counsel, Craig Jacobson ("Jacobson") engaged in

5   negotiations through and *past* the deadline for Plaintiffs to seek entry of default.

6   *See* Declaration of Michael J. Plonsker in support of Opposition to Motion to Set

7   Aside Default ("Plonsker Decl."), at ¶2.  Plaintiffs, through counsel Michael J.

8   Plonsker ("Plonsker"), engaged in these discussions in good faith and were given

9   the impression that Bierko was not interested in settling the matter, but merely in

10   delaying the process so as to prejudice Plaintiffs as much as possible.  *See id.*

11   These suspicions were confirmed.  On December 14, 2012, the parties exchanged

12   what Plaintiffs thought was an agreed upon settlement agreement ready for

13   execution.  *See* Plonsker Decl., at ¶3, Ex. A.  Jacobson, on instructions from Bierko,

14   made a last minute request to insert an extra clause in this agreement to which, on

15   December 17, 2012, Plaintiffs initially did not agree.  Plaintiffs also warned that a

16   failure to sign the agreement that day would see the litigation proceed immediately

17   through entry of default.  *See* Plonsker Decl., at ¶4, Ex. B.

18        (e)    It was on this same day, December 17, 2012, , that Bierko improperly

19   wrote to the Court requesting a 30 day extension "so that he could find an attorney

20   in Southern California," even though for years he had been using the services of

21   Jacobson, a highly prominent and respected entertainment attorney located in

22   Southern California.  *See* Plonsker Decl., at ¶6, Ex. C.

23        (f)    However, later that day, Plaintiffs acceded to the change requested by

24   Bierko (and thus the settlement complied with Bierko's demands), and, by email,

25   informed Jacobson of this and requested that Bierko now sign the amended

26   settlement agreement or else entry of default would be sought by December 19,

27   2012, and litigation would proceed.  *See* Plonsker Decl., at ¶5, Ex. D.  Plonsker

28   reiterated that Bierko had already been granted an extension (seeing that Bierko's

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   response to the Complaint was due on December 12, 2012), and that Plaintiffs had

2   been told that Bierko had no intention of responding to the Complaint in any case.

3   *See id.*

4        (g)    On December 17, 2012, and December 18, 2012, Jacobson

5   communicated more than once to Plonsker that he had asked Bierko to reply to

6   Plaintiffs' request but had heard nothing from the Defendant. *See* Plonsker Decl.,

7   at ¶7, Ex. E.  It bears repeating, the final settlement agreement complied with <u>all</u> of

8   Bierko's demands.

9        (h)    Thus, on December 19, 2012, Plaintiffs filed a request to the clerk that

10   default be entered against Defendant Craig Bierko. *See* Glensy Decl., at ¶5.  This

11   request was made after repeated failed attempts by both Plonsker and Jacobson to

12   get a response from Bierko regarding his intentions and with the warning that a

13   failure to agree would result in the litigation proceeding.

14        (i)    The clerk entered Bierko's default on December 20, 2012.  *See* Glensy

15   Decl., at ¶6.

16        (j)    On December 21, 2012, i.e., one day *after* the clerk had already

17   entered default, Bierko attempted to communicate with Plonsker by phone.

18   Because Bierko was represented by counsel, Plonsker did not reply directly to

19   Bierko (as this would have been a violation of the Rules of Professional Conduct)

20   and referred the matter to Jacobson who then gave his permission for Plonsker to

21   communicate directly with Bierko.  *See* Plonsker Decl., at ¶8, Ex. F.

22        (k)    Before Plonsker could respond to Bierko's call, on December 21,

23   2012, Bierko wrote directly to Plonsker and his colleague Rex Glensy "to request

24   [that Plaintiffs] set aside the motion to allow [him] at least thirty days to organize

25   [his] defense." *See* Plonsker Decl., at ¶9, Ex. G.  Moreover, Bierko also indicated

26   that he would "file [his] own motion to set aside [the] entry of default," and to

27   contact either him or <u>his attorney</u> Craig Jacobson with any response. *See id.*

28        (l)    In the reply to Bierko's letter, sent on December 26, 2012, Plaintiffs

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1 rejected Bierko's attempts for further delay in light of the fact that counsel for both

2 parties had been trying to settle this matter for two years, but Bierko's inability to

3 take "yes" for an answer had made such a settlement impossible. *See* Plonsker

4 Decl., at ¶10, Ex. H.

5       (m)    Nevertheless, as a gesture of good faith, Plaintiffs waited over 30 days

6 (the amount requested by Bierko) before applying for default judgment.  In that

7 time Plaintiffs heard nothing from Bierko, and neither did the Court: no "counsel"

8 was substituted into the case by Bierko, no motion to set aside the default was filed

9 by Bierko, and no entreaties were made by Bierko to finalize the settlement.  In

10 fact, the only action that took place in this time was on January 10, 2013, when the

11 Court issued an OSC ordering Plaintiffs either to file an application for default

12 judgment or dismiss the complaint. *See* Plonsker Decl., at ¶11, Ex. I.  After the

13 issuance of the OSC, Plaintiffs still waited a further two weeks until January 24,

14 2013, to file their application for default judgment to see whether Bierko would

15 take any of the actions that he stated he would (i.e. hire "new" counsel or file a

16 motion to set aside the default).  He did not.

17       (n)    Only after Plaintiffs had filed on January 24, 2013, an application for

18 default judgment at the behest of the Court did Bierko, on January 30, 2013, finally

19 decide that a further delay was warranted.  In filing his Motion to Set Aside the

20 Default, Defendant has merely repeated the same excuses that he offered Plaintiffs

21 and the Court over six weeks earlier without any explanation as to why, six weeks

22 later, his situation has remained unchanged.

23 **III. DISCUSSION**

24       Under Federal Rule of Civil Procedure 55(c), the Court will only set aside the

25 entry of default upon good cause shown by the moving party.  *See* F.R.C.P. 55(c).

26 In determining whether good cause exists to set aside the entry of default, the Court

27 applies the following three factors: (1) whether culpable conduct of the defendant

28 led to the default, (2) whether the defendant has a meritorious defense, and (3)

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   whether the plaintiff will be prejudiced.  *See Brandt v. American Bankers Ins. Co.*
2   *of Florida*, 653 F.3d 1108, 1111 (9th Cir. 2011) (also stating that these factors are
3   the same as those examined under Federal Rule of Civil Procedure 60(b) to
4   determine whether a defendant is entitled to relief from default judgment because of
5   "excusable neglect.")  These three factors are disjunctive, and "the district court [is]
6   free to deny [relief] 'if *any* of the three factors [is] true.'"  *See Franchise Holding*
7   *II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 926 (9th Cir. 2004)
8   (quoting *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104,
9   1108  (9th Cir. 2000)).  Defendant has the burden of showing that any of these
10  factors favor setting aside the default.  *See TCI Group Life Ins. Plan v. Knoebber*,
11  244 F.3d 691, 697 (9th Cir. 2001).

**A.    Bierko's Culpable Conduct Led to the Entry of Default**

13          To prevail on a motion to set aside a default, the moving party must provide a
14  reasonable excuse for not intervening in the case before a default was issued.  *See*
15  *Meadows v. Dominican Republic*, 817 F.2d 517, 520 (9th Cir. 1987).  Excusable
16  neglect is usually shown in those circumstances where Defendant was not capable
17  of answering or otherwise responding to the complaint on time.  For example,
18  evidence that a defendant was in hospital during the period in which the complaint
19  had to be answered was sufficient to constitute excusable neglect.  *See Rooks v.*
20  *American Brass Co.*, 263 F.2d 166, 168 (6th Cir. 1959).  Similarly, evidence that
21  the summons and complaint had been placed in a pile of junk mail was sufficient to
22  constitute excusable neglect.  *See Standard Enterprises, Inc. v. Bag-It, Inc.*, 115
23  F.R.D. 38, 39 (S.D.N.Y. 1987).

24          However, the motion to set aside the default should be denied where
25  defendant has notice of the action and *chooses* not to respond as a delaying tactic or
26  for other strategic reasons such as to prolong settlement discussions.  *See e.g. TCI*
27  *Group Life*, 244 F.3d at 699; *see also Billy Steinberg Music v. Bonin*, 129 F.R.D.
28  488, 491 (M.D.Pa 1990).  A key inquiry into whether a defendant is culpable for

1   not responding to the complaint in time is whether "the defaulting party [has]

2   general familiarity with legal process or [was in] consultation with lawyers at the

3   time of the default" so that it can be inferred that the failure to respond was

4   deliberate, willful, or in bad faith. *See id* at 699 n.6 (citing *Meadows*, 817 F2d. at

5   522). Indeed, the failure by a defendant to answer the summons and complaint

6   notwithstanding frequent chats with his lawyers during the period for answer is

7   clear evidence of culpability. *See Kingvision Pay-Per-View Ltd v. Lake Alice Bar*,

8   168 F.3d 347, 350 (9th Cir. 1999); *see also Richmark Corp. v. Timber Falling*

9   *Consultants, Inc.*, 937 F.2d 1444, 1449 (9th Cir. 1991) (retaining counsel to protect

10  defendant's interests in other matters is evidence of willful failure to respond to the

11  complaint). Most relevant here, the failure to obtain an order or agreement to

12  extend time to file a responsive pleading is culpable conduct when defendant was

13  on notice that plaintiff would pursue litigation should settlement talks break down.

14  *See Franchise II*, 375 F.3d at 926.

15       Bierko concedes that he was represented by counsel with whom he was

16  repeatedly in touch throughout the whole period in which he was to answer the

17  complaint. To wit, he notes that shortly after he was served, he traveled to Los

18  Angeles and that he was "communicating *with my attorney* via E-mail and phone

19  messages between shots." *See* Motion, at 9:18-20; Bierko Decl., at 3:5-7. He also

20  states that as a result of the lawsuit "[t]hrough [his] transaction entertainment

21  lawyer [he] engaged in extensive good faith negotiations to settle." *See* Motion, at

22  5:22-23. Furthermore, Bierko also concedes that nothing in this lawsuit was new to

23  him considering that, as he notes, "[f]or nearly two years [he] has sought a

24  resolution" of this matter. *See* Bierko Decl, at 6:4-6.

25       Given Bierko's familiarity with the issues raised in this action and his

26  admitted retention of counsel on this matter "for nearly two years," it is implausible

27  to accept his assertion that he missed his deadline to respond to the Complaint

28  because he was not able to find counsel in time or because he thought the matter

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   might settle.  Bierko is not even holding himself to his own word in that on

2   December 17, 2012, he assured the Court that he needed 30 days to find counsel

3   and yet almost double that amount of time has passed and still Bierko claims not to

4   have counsel (which of course is not true because he has been represented in this

5   matter) and therefore needs even more time.[1]  Considering that he has counsel, this

6   excuse is patently not credible.

7       In fact, Bierko's excuses merely evidence, if taken at face value, that he was

8   too busy to deal with this lawsuit.  Whether it is because he had to work, *see* Bierko

9   Decl., at 3:5-7 (which is an eyebrow-raising excuse seeing that most people work),

10  or because he had to travel for the Holidays on the day the answer was due, *see*

11  Bierko Decl., at 2:15-16 (another eyebrow-raising excuse seeing that the answer

12  was due December 12, 2012, a full two weeks before Christmas and three weeks

13  after Thanksgiving), it is clear that Bierko will say anything to deflect from the fact

14  that he knowingly (as admitted by him) and willfully (also as admitted by him)

15  chose not to answer the Complaint.

16      Moreover, Bierko's holding out hope that a settlement would be reached is

17  not excusable neglect.  *See Franchise II*, 375 F. 3d at 926.  In *Franchise II*, the

18  parties engaged in settlement discussions, however, at a certain point, the plaintiff

19  informed the defendant that "it was proceeding with litigation." *See id.* , at 926.

20  The defendant, nevertheless, failed to respond to the complaint on time.  In

21  upholding the district court's refusal to set aside the default, the Court of Appeal

22  noted that if a defendant "has received actual or constructive notice of the filing of

23  the action and failed to answer, its conduct is culpable." *Id.*

24      Here, like in *Franchise II*, Bierko was repeatedly warned, the last time on

25  December 17, 2012, that failure to settle the case would result in Plaintiffs seeking

26  entry of default and pursuing with this litigation.  *See* Plonsker Decl., at ¶5, Ex. C.

27  Bierko admits this several times in his motion papers.  *See* Bierko Decl., at 2:15-16,

28  _____
    [1] Indeed, Bierko's motion papers alone are evidence that he has an attorney working for him.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   3:14-17, 3:20-23, 4:1-2.  Thus, because he was fully aware of the consequences of

2   his inaction regarding both the settlement and his failure to respond to the

3   Complaint, he is fully culpable for the entry of default.

4   **B.    Bierko Does Not Have a Meritorious Defense**

5   Plaintiffs have requested declaratory relief for the following: (1) that How To

6   Pictures owns the copyright in the Funny or Die screenplay and the Jim Brockmire

7   Character; (2) that the voice of a colorful baseball announcer (whether played by

8   Bierko or Azaria) is not in and of itself copyrightable subject matter, *see* Complaint,

9   at ¶¶20-23; and (3) that no implied in fact contract was ever created between Azaria

10  (or How To Pictures), on the one hand, and Bierko on the other, pertaining to the

11  use of a voice of a colorful baseball announcer (whether played by Azaria or

12  Bierko) or the use of the Jim Brockmire Character.  *See* Complaint, at ¶¶24-27.

13  Defendant has offered no evidence or law to support his argument that his defense

14  to these claims is meritorious.

15  1.    Bierko Cannot Own A Copyright In A Voice

16  It is an axiomatic rule of Copyright Law that only works of authorship "fixed

17  in any tangible medium of expression" fall within the scope of protection of the

18  Copyright Act.  *See* 17 U.S.C. §102(a).  This rule is a constitutional necessity for

19  without fixation, a work cannot be classified as a "writing" under the Copyrights

20  Clause of the U.S. Constitution.  *See* U.S. Const. Art. 1 §8.

21  A work is not "fixed" under the Copyright Act unless its embodiment in

22  tangible form is "sufficiently permanent or stable to permit it to be perceived,

23  reproduced, or otherwise communicated for a period of more than transitory

24  duration."  *See* 17 U.S.C. §101.  Thus, oral presentations that are not themselves

25  based on antecedent fixations are not afforded copyright protection.  *See Fritz v.*

26  *Arthur D. Little, Inc.*, 944 F. Supp. 85, 100 (D. Mass. 1996) (lectures not based on

27  prior notes are not copyrightable subject matter).

28  Throughout his motion papers, Bierko refers to a certain "property" that he

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   supposedly created during college.  *See* Bierko Decl., at 5:20-22.  What Bierko is

2   very careful in not saying is what exactly comprises this "property."  It is clearly

3   not a screenplay, nor a video, nor a treatment, not even an outline; indeed, it is

4   nothing that is fixed expression in a tangible form.  Bierko himself hints at what

5   this "property" might be when he claims that he "introduced it to [Azaria] in or

6   around 1990."  *See* Bierko Decl., at 5:20-21.  What is undisputed by Bierko is that

7   what Bierko "introduced to" Azaria in 1990 was the voice of a colorful baseball

8   announcer—nothing more.   This is a communication of transitory duration akin to

9   an oral presentation and thus not protectable under Copyright Law.  *See Fritz*, 944

10  F. Supp. at 100.

11       As to the Jim Brockmire Character, and the screenplay of the Funny or Die

12  video and the video itself (which are all expressions fixed in a tangible form and

13  thus works subject to copyright protection), Bierko does not allege that he had

14  anything to do with their creation or ownership because he did not.  He simply

15  asserts ownership over an amorphous "property" to which he gives no shape.  He

16  therefore has no meritorious defense to Plaintiffs' first claim for declaratory relief.

17            2.    The Parties Never Had An Agreement Pertaining To The Use Of

18                  The Baseball Announcer Voice

19       To establish a cause of action for breach of implied-in-fact contract, a

20  plaintiff must prove the following five elements: (1) that he prepared the work; (2)

21  that he disclosed the work or the ideas to the offeree for consideration; (3) under all

22  circumstances attending disclosure, it can be concluded that the offeree voluntarily

23  accepted the disclosure knowing the conditions on which it was tendered (i.e., the

24  offeree must have the opportunity to reject the attempted disclosure if the

25  conditions were unacceptable); (4) use by the offeree; and (5) the reasonable value

26  of the ideas used.  *See, e.g., Faris v. Enberg*, 97 Cal. App. 3d 309 (1979); *Mann v.

27  Columbia Pictures*, 128 Cal. App. 3d 628, 647 n.6 (1982).  Although there is no

28  requirement under California law that the idea be novel or original to state a claim

1   for breach of implied contract, a general or amorphous idea may be deemed to have

2   *no value* or be considered so well known that the jury could easily conclude that the

3   defendant's work was independently created. *See, e.g.*, *Weitzen-Korn v. Lesser*, 40

4   Cal. 2d 778, 791-2 (1953).

5       Moreover, a defendant may be able to prevail *on summary judgment* where

6   there is no evidence to dispute a defendant's claim of independent creation even if a

7   plaintiff can prove access and substantial similarity. *Hollywood Screentest of Am.,*

8   *Inc. v. NBC Universal, Inc.*, 151 Cal. App. 4th 631, 649-50 (2007). In *Hollywood*

9   *Screentest*, the plaintiff alleged that the "Hollywood Screentest" show pitched to

10  defendants was similar to NBC's show "Next Action Star." *Id.* at 633-34.

11  Notwithstanding the fact that the plaintiff in *Hollywood Screentest* could show both

12  access and similarity of the ideas, the Court of Appeal nonetheless granted

13  defendants' summary judgment motion on the grounds of independent creation. *Id.*

14  at 649-50. Specifically, the Court found that no disputed issue of fact existed

15  because the defendants had "successfully shown undisputed evidence of

16  independent creation by entities unrelated to [the defendant] and unassisted by [the

17  defendant]." *Id.* at 648.

18      In suggesting guidelines for adjudicating similar cases, the Court explained

19  that when there exists "clear, positive and uncontradicted evidence" of independent

20  creation, then a plaintiff's "suspicion . . . imagination, speculation, supposition,

21  surmise, conjecture, [and] guesswork" would not suffice to create an issue of fact.

22  *Id.* at 648 (citations omitted). Therefore, uncontradicted evidence of independent

23  creation "negates any inference that [a defendant] used [plaintiff's] ideas", an

24  essential element to the cause of action. *Id.*

25      According to Bierko's own declaration, as well as Azaria's declaration

26  submitted with Plaintiffs' application for default judgment, there was no implied-

27  in-fact contract relating to the use of the voice of a baseball announcer. First,

28  Azaria declares that he created his voice in 1983 at the latest and performed it in

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   college.  *See* Declaration of Hank Azaria in support of Application for Default

2   Judgment ("Azaria Decl."), at ¶¶2-3.  This allegation cannot be contradicted by

3   Bierko because the two did not meet until 1990.  *See id.*, at ¶3.  As such, even

4   assuming Bierko's allegations to be true (which they are not), Azaria's claim of

5   independent creation cannot be rebutted by Bierko and thus Bierko's claim would

6   fail for this reason alone.

7        Moreover, although Bierko states that he has "witnesses" who can attest that

8   Bierko "pitched" the voice to Azaria, again, he is necessarily vague as to the

9   circumstances of this supposed "pitch."  *See* Bierko Decl., at 5:26-27.  This is

10  because there was no "pitch" as this term is understood in the industry, but rather,

11  as noted by Azaria, what Bierko calls a "pitch" was nothing more than the two

12  horsing around and leaving voice mail messages using the colorful baseball

13  announcer voice.  *See* Azaria Decl., at ¶3.  Nothing from these circumstances can

14  lead to the inference that Bierko shared the voice with Azaria with the assumption

15  that Azaria could reject hearing it or otherwise communicate to Bierko that he did

16  not accept the terms under which it was presented.  Under the circumstances

17  present in this case, as a matter of law, no contract can be implied between Bierko

18  and Azaria and therefore even as to Plaintiffs' second declaratory relief claim,

19  Bierko has no meritorious defense.

20       **C.    Plaintiffs will be Prejudiced by Further Delay**

21       A motion to set aside a default should not be granted if the plaintiff will

22  suffer prejudice by reopening the action.  *See Pioneer Investment Services Co. v.*

23  *Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 395 (1993).  Delaying the

24  resolution of the case has been shown to be enough evidence of prejudice to the

25  plaintiffs justifying the denial of a motion to set aside the entry of default.  *See*

26  *Franchise II*, 375 F.3d at 927.

27       Bierko has known for some time that Plaintiffs are in the process of trying to

28  secure financing to develop and produce a live action feature film based on the Jim

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1  Brockmire Character. It is well-known in the entertainment industry that an
2  ownership claim by a third party against material being developed (however
3  baseless or frivolous as Bierko's is) is a huge impediment to securing financing
4  because investors are justifiably worried that their investment might be tied up in
5  court for a long time without any chance of seeing any returns. As Bierko
6  concedes, this matter is now at least two years old, and any further delay will cause
7  Plaintiffs significant damage and prejudice in that it is a substantial possibility that
8  potential investors will decide not to invest in the project should this matter be tied
9  up any longer.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendant's
motion to set aside the entry of default be denied.

Dated: February _11_ , 2013      **ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.**

By: _____
Michael J. Plonsker
Rex D. Glensy

**ATTORNEYS FOR PLAINTIFF HANK**
**AZARIA AND HOW TO PICTURES, INC.**

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES